## In re Anonymous No. 29 D.B. 94

Disciplinary Board Docket no. 29 D.B. 94.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GEORGE, *Member,* April 29, 1996—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 22, 1994, petitioner, Office of Disciplinary Counsel, filed a petition for discipline against respondent, [    ]. Respondent did not file an answer. A hearing on this matter was held on August 19, 1994, before Hearing Committee [    ] comprised of Chairperson [    ], Esquire, and Members [    ], Esquire, and [    ], Esquire. Respondent appeared pro se. Petitioner was represented by [    ], Esquire. The committee filed its report on August 22, 1995, and recommended a two-month suspension. Petitioner filed a brief on exceptions on September 12, 1995. Respondent filed a brief on exceptions on September 15, 1995. Oral argument was requested by respondent and held before a three-member panel of the board on November 29, 1995.

This matter was adjudicated by the Disciplinary Board at the meeting held on December 7, 1995.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsyl-

vania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ], Esquire, was born in 1944, was admitted to practice law in the Commonwealth of Pennsylvania in 1971, and his office is located at [ ]. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court. (P.E. 1, no. 2.)

(3) On March 15, 1990, [A] died testate. On March 15, 1990, letters testamentary were granted to [B], decedent's son. (P.E. 1, no. 3.)

(4) Respondent was named as attorney of record for the estate of [A]. (P.E. 1, no. 4.)

(5) On March 16, 1990, respondent opened checking account number [ ] at [C] Bank, captioned, "[B] ex. est. [A] dec'd.," estate account. (P.E. 1, no. 5.)

(6) Respondent and [B] each had separate signatory authority over the estate account. The monthly statements of account and the negotiated items were directed to respondent. (P.E. 1, no. 6.)

(7) Respondent did not make a prepayment or payment of Pennsylvania inheritance tax, file an inheritance tax return, an estate inventory, or a status report on behalf of the estate. (P.E. 1, no. 7.)

(8) From April 1990 through October 1990, respondent caused the issuance and negotiation of eight checks drawn on the estate account, made payable to himself. (P.E. 1, no. 8.)

(9) The eight checks, numbered 101 through 107, inclusive, and 114, totaled $9,000. (P.E. 1, no 9.)

(10) By register's order dated January 17, 1991, respondent was notified that an estate inventory had not yet been filed, and he was directed to effect such a filing within 20 days. (P.E. no. 4.)

(11) Respondent did not comply with the January 17, 1991, register's order and did not file an inventory on behalf of the estate at any time. (P.E. 1, no. 11.)

(12) In or about October 1990, [B] retained the services of [D], Esquire, and [E], Esquire, to assist him in the administration of the estate. (N.T. 24-31.)

(13) Attorney [D] wrote letters to respondent, on behalf of [B], in an effort to effect a return of the estate assets, including monies that respondent had paid to himself. (P.E. 1, no. 13.)

(14) Respondent made no reply to Attorney [D's] letter dated January 17, 1991, nor timely undertook any of the actions requested therein, or the actions requested of him by Attorney [D's] letter dated January 30, 1991. (P.E. 4, 5, 6, 7, 8; N.T. 24-30.)

(15) On February 21, 1991, Attorneys [E] and [D] filed, on behalf of [B], a petition for removal of counsel of record and additional relief. (P.E. 1, no. 15.)

(16) By order of court dated February 21, 1991, Judge [F] awarded a citation directing respondent to show cause why, inter alia, he should not be removed as counsel of record for the estate. (P.E. 1, no. 16.)

(17) The citation was made returnable on March 18, 1991, and a hearing on the petition for respondent's removal as counsel for the estate was scheduled for April 29, 1991. (P.E. 1, no. 17.)

(18) Respondent did not appear at the April 29, 1991 hearing. By order of court dated April 30, 1991, respondent was ordered:

(a) Removed as counsel of record, and Attorneys [E] and [D] were substituted as counsel of record (P.E. 1, no. 18(a)); and,

(b) To forward to Attorney [E], inter alia, a certified check in the amount of $9,542.86, representing the amount respondent had taken from the estate account, plus interest thereon. (P.E. 1, no. 18(b).)

(19) Respondent issued from his [G] bank account numbered [    ], captioned, "[Respondent], Esquire, escrow account," check no. 722, dated May 7, 1991, made payable to the estate in the amount of $9,542.86. Check no. 722 cleared respondent's escrow account on May 9, 1991. (P.E. 21, 22.)

(20) Although respondent had paid $9,000 to himself from the estate account, he had not deposited nor maintained in his escrow account an amount sufficient to fund his reimbursement to the estate account by check no. 722. (P.E. 15, 16, 19, 22, 22(a), 29, 30, 31; N.T. 112.)

(21) On or about March 21, 1991, respondent received from [H] Insurance Company a check dated March 21, 1991, drawn in the amount of $45,000 and made payable to [I] and to respondent as her attorney, which sum represented the settlement of [I's] personal injury claim. (P.E. 1, no. 21.)

(22) On April 12, 1991, respondent deposited the check, which bore the endorsement of both he and [I], into his escrow account. (P.E. 1, no. 22.)

(23) Immediately prior to respondent's deposit of the $45,000 check on April 12, 1991, his escrow account balance was $415.19. (P.E. 22; N.T. 57.)

(24) On or about April 12, 1991, respondent provided [I] with a document captioned, *"Settlement Sheet, [I] vs. [J] Company,"* which indicated:

(a) A recovery of $45,000 (P.E. 1, no. 24(a));

(b) Counsel fees of $15,000 (P.E. 1, no. 24(b));

(c) A Medicare subrogation claim in the amount of $10,249.48, with the accompanying notation, "(this will be contested)" (P.E. 1, no. 24(c)); and,

(d) An amount due [I] of $19,750.52, with the proviso, "This amount to be increased by any additional concessions by Medicare and these concessions will be pursued by counsel." (P.E. 1, no. 24(d).)

(25) By check no. 711, dated April 15, 1991, which cleared respondent's escrow account on June 12, 1991, respondent remitted to [I] $19,750.52, constituting that portion of the settlement proceeds due her which was not subject to the Medicare subrogation claim. (P.E. 1, no. 25.)

(26) When respondent issued check no. 722 from his escrow account to reimburse the estate, he was only able to make the reimbursement from that account because he had retained $10,249.48 in trust in regard to the disputed Medicare subrogation claim. (P.E. 19-22(a), 29, 30, 31; N.T. 106, 114-16, 119.)

(27) When check no. 722 cleared respondent's escrow account on May 9, 1991, and when check no. 711 cleared his escrow account on June 12, 1991, he no longer held in his escrow account those funds with which he was entrusted in regard to Medicare's subrogation claim. (P.E. 19-22(a), 29, 30, 31; N.T. 108, 112-13.)

(28) On June 12, 1991, the remaining balance in respondent's escrow account was $63.60. (P.E. 1, no. 28.)

(29) Respondent expended time and effort regarding the administration of the estate with regard to the following:

(a) Respondent met with [B] and prepared a petition for probate and grant of letters (N.T. 92);

(b) Respondent and [B] opened an estate account at [C] Bank (N.T. 92);

(c) Pursuant to [B's] directions, respondent made payments from the estate to certain beneficiaries (N.T. 92);

(d) Respondent paid off certain debts of the estate (N.T. 93); and,

(e) Respondent corresponded with an attorney representing one of the specific beneficiaries of the estate concerning a request for information concerning the distribution due that beneficiary. (N.T. 93.)

(30) Within a few days after filing the petition for grant of letters, [B] left the country and did not return for approximately six months, during which time the respondent could not contact [B] concerning the administration of the estate. (N.T. 92, 93.)

(31) The amount of Medicare's claim against [I] for reimbursement of medical bills paid by Medicare from her recovery on her personal injury claims against the [J] Company was disputed and was being contested by respondent on behalf of [I] when a portion of the funds being held on her behalf to pay the Medicare subrogation claim was used by respondent to reimburse the estate. (N.T. 104.)

(32) Respondent received a four-month suspension in August 1982 as a result of his neglect of a medical malpractice suit. This neglect resulted in a judgment of non pros entered against respondent's clients. Respondent did not timely inform his clients of the non

pros and when questioned by his clients, he made mis-representations to them.

(33) Respondent received a private reprimand in December 1989 as a result of his misrepresentations to a client as to the status of a case.

(34) Respondent received an informal admonition in September 1990 as a result of neglect of a legal matter and failure to act with reasonable diligence.

## III. CONCLUSIONS OF LAW

By his conduct as set forth in the above findings of fact, respondent has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.

(3) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the board upon a petition for discipline filed by petitioner charging respondent with violations of Rules 1.3, 1.15(a), and 8.4(c) in connection with representation of an estate. The succinct facts of this case are that respondent accepted representation of an estate but failed to undertake any action to dispose of the matter. He did issue checks to himself from the estate account totaling $9,000. The administrator

of the estate retained the services of a different attorney, who undertook a return of the estate assets from respondent, including the $9,000. Respondent made no reply to these efforts. A court order was subsequently issued directing respondent to forward a check in the amount of $9,000 plus interest to the new attorney. Respondent issued a check for this amount from his escrow account. However, respondent was only able to reimburse this amount because he had retained approximately $10,000 in his account for a different client that was subject to a Medicare subrogation claim.

At the hearing, petitioner introduced evidence to support the above facts. Respondent testified that he had permission from his second client to use the funds to reimburse the first client. Respondent also testified that his neglect of the estate matter arose from the problems he was having at his office relative to lack of heat and water, and he alluded to marital problems he was experiencing at the time in question. The committee found that based on respondent's testimony concerning the second client's consent, petitioner did not carry his burden of proving violations of Rules 1.15(a) and 8.4(c). The committee also found credible respondent's testimony concerning his office and marital problems and considered this evidence in mitigation.

Petitioner excepted to these findings and argued that the evidence presented was clear to prove violations of Rules 1.15(a) and 8.4(c). Petitioner also argued that the committee's reliance on testimony concerning respondent's problems was erroneous. After thorough review of the record before us, the board agrees with petitioner that the committee erred in dismissing violations of Rules 1.15(a) and 8.4(c). The committee should not have relied on respondent's bald assertion

that he had his client's permission to use funds to reimburse the estate, especially since it was not clear if the funds were the client's to consent to using. The committee should not have placed the burden on petitioner to refute respondent's assertion, since he was asserting an affirmative defense, and he had the burden of production. The record is clear and convincing that respondent took funds from the first client to which he was not entitled and when directed to return them, he took funds entrusted for a different client to correct his initial misconduct. The committee also erred in giving too much weight to respondent's claims that his problems emanated from his office building troubles and his marital troubles. The board is not implying that respondent was not truthful in his assertions; however, in order for this testimony to be used in mitigation, it must meet the standard set forth in *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). That standard states that in order for testimony of personal problems to be used to mitigate a disciplinary sanction, respondent must prove the existence of these problems by clear and convincing evidence. *In re Anonymous No. 76 D.B. 91,* 20 D.&C.4th 385 (1994); *In re Anonymous No. 124 D.B. 89,* 12 D.&C.4th 417 (1991); *In re Anonymous No. 107 D.B. 89,* 12 D.&C.4th 240 (1991); *In re Anonymous No. 81 D.B. 87,* 11 D.&C.4th 393 (1991); *In re Anonymous No. 111 D.B. 89,* 9 D.&C.4th 526 (1990). The record demonstrates that no convincing evidence was presented that such conditions, in fact, deprived respondent of an ability to understand the gravity of his conduct or an awareness of right and wrong.

The board concludes that based on the record it is clear that respondent violated Rules 1.3, 1.15(a), and 8.4(c). The final issue before the board is the extent of discipline to be imposed on respondent in light of

these violations. When considering the appropriate sanction the board is cognizant that respondent has a prior record of discipline.

The primary purpose of our system of lawyer discipline is to protect the public. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). Sanctions are to be imposed in accord with the misconduct and based on the circumstances unique to each particular case. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

In cases involving an attorney's neglect and misrepresentation, the Supreme Court of Pennsylvania has held that a suspension is the appropriate discipline. *In re Anonymous No. 62 D.B. 81,* 27 D.&C.3d 148 (1983). It is the attorney's duty to pursue the legal matters entrusted to him or to properly withdraw from representation. *In re Anonymous No. 7 D.B. 86 and 22 D.B. 87,* 49 D.&C.3d 165 (1988). If the attorney, instead, chooses to neglect a case while failing to inform the client of the true status of the case, a suspension from the practice of law may be imposed as in the case of *In re Anonymous No. 32 D.B. 80,* 24 D.&C.3d 423 (1982). An attorney who lacked the requisite competence to handle an estate matter and engaged in dishonest conduct, including failure to surrender estate funds in her custody, was suspended for 15 months. *In re Anonymous No. 109 D.B. 90,* 15 D.&C.4th 238 (1992). An attorney who improperly handled the settlement proceeds of a client and attempted to avoid liability for the same was suspended for 18 months. *In re Anonymous No. 26 D.B. 90,* 16 D.&C.4th 308 (1992).

Respondent has a prior record of discipline consisting of a four-month suspension in 1982, a private reprimand in 1989, and an informal admonition in 1990. The con-

duct engaged in by respondent that led to the prior disciplines included neglect, misrepresentation, and failure to act with reasonable promptness and diligence. That misconduct is similar to the misconduct engaged in by respondent in the instant situation. Respondent's record of recidivist behavior implies that he has not benefitted from his experiences and continues to conduct himself in violation of the Rules of Professional Conduct. It is well established that recidivism may be considered as aggravating when determining the appropriate disciplinary sanction. *Office of Disciplinary Counsel v. Duffield, supra; Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 614 A.2d 1116 (1992).

Respondent's neglectful conduct and misrepresentation involved the serious action of commingling client funds with his own. Such actions are professionally irresponsible and deserving of discipline. Respondent's conduct raises serious questions as to his competence to practice law. Based on the totality of the circumstances of this case, the board concludes that a 12-month suspension would adequately address respondent's misconduct and effectuate the purpose of the disciplinary system.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [    ], be suspended from the practice of law for a period of 12 months.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Carson did not participate in the December 7, 1995 adjudication.

## ORDER

And now, June 18, 1996, upon consideration of the report and recommendations of the Disciplinary Board dated April 29, 1996, the petition for review and response thereto, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of 12 months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Zappala did not participate in this matter.